the duty imposed on him, the law might excuse him. Such a case, however, is not before you, for there is no evidence tending to show even that the party upon whom the obligation to "obliterate and efface" rested was in any way interfered with or prevented from doing so. But the important inquiry is, upon whom, under the testimony before you, did the law impose the duty of cancelling and effacing? Was it upon Adler & Furst, the defendants? And if so, are they responsible for the acts of their employees? In reading the clause of the section pronouncing the penalty as a separate and distinct part of the section, countenance may be found for the construction that the penalty was denounced against the person only who did the act of emptying. A close examination of the language of the part of the section denouncing the penalty shows beyond a doubt that it refers to the duty which the section in its beginning imposes, for it provides that every person who fails to efface and obliterate said mark, stamp or brand at the time of emptying, etc. As we have already seen, the provisions of the section imposing the duty to efface and obliterate is of such mark, brand or stamp only, as are required by law to be upon casks or packages, and hence the language in the penalty clause—said mark, stamp or brand. To read the penalty clause without reference to the preceding one would leave us without any designation as to what mark, brand or stamp the law is applicable to. To read the provision providing the penalty, in connection with the clause imposing the duty of effacing and obliterating such mark, brand or stamp required by law to be upon casks and packages, gives us an intelligent reading of the statute. But it does more. The construing of the duty and penalty clause together enables us to ascertain to whom the statute applies, namely: to "every person who empties or draws off, or causes to be emptied or drawn off, any distilled spirits." Such a construction, in entire harmony with the provisions of the statute, accomplishes its evident object to hold those responsible, among others, who cause the drawing off. This leads us to the question under the evidence whether a person or partnership engaged in rectifying and employing persons who empty distilled spirits from casks and packages bearing marks, brands and stamps required thereon by law, can be said to cause the emptying or drawing off of such spirits. The owners, possessors and operators of a rectifying establishment engaging hands, furnishing the materials and receiving its products, may be said to cause the emptying of spirits used in their business by those in their employ. And any failure on their part to efface and obliterate marks, stamps or brands at the time of emptying casks or packages of distilled spirits on which cask or package marks, stamps or brands were required by law, or cause the same to be done,

such person or persons so causing the emptying without effacing or obliterating such mark, brand or stamp is amenable to the law. The jury is instructed that if they find from the evidence that Adler & Furst were rectifiers and carrying on a rectifying establishment in the Western district of Missouri; that they emptied or caused to be emptied by their employees, as explained, any distilled spirits from casks or packages bearing any mark, brand or stamp required by law, and failed to efface and obliterate said mark, stamp or brand, at the time of emptying such cask or package, as charged in the indictment, they should .find the defendants guilty, otherwise acquit. It was the duty of Adler & Furst, the defendants, to efface or obliterate the marks, brands and stamps on ·emptying, or cause it to be done, and the failure of their employees to do what the law imposes as a duty on them does not excuse them.

The jury then retired, and after an absence of an hour returned with a verdict ·of "Guilty on all counts of the indictment except the first.'

[See Case No. 16,255.]

---

UNITED STATES v. The ADMIRAL. See Case No. 85.

---

## Case No. 14,425.

### UNITED STATES v. The ADVANCE.

[Cited in The Acorn, Case No. 29. Nowhere reported; opinion not now accessible.]

---

## Case No. 14,426.

### UNITED STATES v. ALBERTY.

[Hempst. 444.] [1]

Circuit Court, D. Arkansas. April, 1844.

CRIMINAL LAW — FEDERAL JURISDICTION — INDIAN COUNTRY.

1. The circuit and district courts of the United States can take cognizance of civil and criminal matters only so far as the power so to do is conferred upon them by statutes of the United States.

2. The jurisdiction of these courts, so far as it results from the terms of their creation, or is necessarily implied in their constitution, is restricted to the territorial limits within which they are placed.

[Cited in Ex parte Kang-gi-shun-ca, 109 U. S. 560, 3 Sup. .Ct. 396.]

3. Acts of congress of the 30th of March, 1802 [2 Stat. 139], and of the 30th of June, 1834 [4 Stat. 729], to regulate intercourse with the Indian tribes and preserve peace on the frontiers; the act of 3d of March, 1825 [4 Stat. 115], relating to crimes against the United States; the act of 15th June, 1836 [5 Stat. 50], admitting Arkansas into the Union, and the act of March 3d, 1837 [5 Stat. 176], amendatory of the judicial system of the United States, commented on and explained.

4. Courts of the United States are of limited, though not of inferior, jurisdiction; and hence